Regarding this case, Mr. Bond did not receive his day in court. As the panel is aware, after the judge who presided over the case recused herself prior to sentencing, the district court judge who was appointed to the case issued an order stating that Mr. Bond would be released for pre-trial services because his appeal is not for the purposes of delay and raises a substantial question of time. The judge put off the sentencing due to that, and there are four issues in this case that truly demonstrate that Mr. Bond did not receive his day in court, as he should have pursuant to the Constitution of the United States. I'm going to skip around to the most powerful issue, the issue that Mr. Bond was not able to testify on his own behalf without the trial judge continually interrupting and basically degrading him in front of the jury. It was very, very prejudicial. For instance, the trial judge gave Mr. Bond three choices for how he could answer questions. He could either say yes, no, or I can't answer yes or no. Well, that wasn't right at the beginning, was it? That was after several hours of testimony that could politely be termed circular or extended. Isn't that correct? That's what the judge felt the testimony was, but Mr. Bond was attempting to present his case and describe for the court and for the jury how working in insurance works. One of the major issues of this case was the difference between net income and gross proceeds from self-employment. That's not a difficult concept limited to insurance. If you pick out some of the answers, perhaps you can illustrate how a more extended answer is required. When I looked at the transcript, I have to say a good number of times a question that seemed capable of a short answer produced an awfully long response, much of the response having little to do with the question. No, I would disagree with that, Your Honor. He was attempting to answer the questions in the best way that he could. Also, I'd like to remind the panel that Mr. Bond, without a doubt, was disabled, and his disability was a severe head injury. The court, instead of recognizing that, again, limits him to the three answers when she didn't limit the government. For example, there's- Tell me your prejudice by that. I mean, that occurs in trials from time to time when trial judges get impatient. The question is, was your client prevented from putting on his case, and the question for us is whether or not he was prejudiced. Yes, he was prejudiced because this is a case where it's regarding Social Security fraud. There's a question of honesty, and the jury's seeing Mr. Bond placed up there on the stand, and every time he's trying to answer something, the trial judge is making a commentary on what he's saying. Number one, he's never able to get a flow going, so you can never tell what his defense is, what the answers to the questions are. The judge keeps cutting him off. You can tell the attorney doesn't know what to do with it, and the jury sees this. So, Mr. Bond is cast in a light where he looks like he's dishonest because the judge is implying that he is. By every time that he answers a question, no, that's irrelevant. Keep going. Answer the next one. Answer the next one. When she did not do that to the government, in fact, there's a question and answer dialogue on page 79 of defendant's excerpts, and the question that's asked to the government's witness on the stand is, can you tell us what that document is? And then it goes over to page 80. The government witness says, yes, and according to the trial judge, that should be the end of the question. But if you look at the transcript, there's almost a page of describing what the exhibit is. The exhibit, she makes commentary on the exhibit. The address on the invoices are two different addresses. This is in a standard invoice. There's all sorts of dialogue. And then the witness asks a question to the government and says, do you want to know the price regarding the exhibit she's looking at? So the judge allows the government witness and the government attorney to have dialogue, to explain the questions, and doesn't allow the same to Mr. Bond. So when the jury's seeing that, they're going to have questions about, why isn't he allowed to testify? There must be something wrong with his testimony. And that's where the prejudice lies. Mr. Bond was permitted to testify for about three and a half hours without judicial interruption. Is that correct? That's correct. If you look at the government's case, there's about four days of testimony. I'm just starting. I've got a couple of questions to ask you. It is correct that the trial judge allowed three and a half hours of testimony of the defendant, Mr. Bond, without interruption. Isn't that correct? Yes. And isn't it also correct that she brought counsel into chambers, or at least outside the presence of the jury on two separate occasions and warned Mr. Bond's counsel about asking extraneous questions, long-winded answers, that sort of thing? She did warn that of his counsel. Twice. Yes. Twice, correct? Yes. And began to interpose and restrict questions only after those two warnings, right? Yes. What do we make of that? It does not change Mr. Bond's prejudice that he received. Again, he testified for three, three and a half hours, but the government had about four days of witnesses where they were able to present evidence of what his gross proceeds were. And this was Mr. Bond's time to explain it. And one of the things that he's trying to do in the transcripts of the testimony that your client wants to put on that he was prevented from putting on. You can see in the transcripts there is testimony where he's trying to describe to the jury how you get from the gross proceeds to the net. And he tries to give a history of what's going on in the insurance industry. You become an insurance agent, you take training, you get leads, and you get this gross income. But to get to that gross income, he starts telling about all the things he did. There's times where he's talking about seminars where he gets cut off, where he talks about people who mentored him and he gets cut off. And he's cut off continuously. And this was all relevant to the gross versus net issue, which, again- He wanted to put on evidence of seminars, mentorship, and what else? And evidence regarding expenses. And this ties into all the issues are very- What evidence of expenses was your client precluded from putting on as evidence? What expenses didn't come into the record? Specifically, we don't know because it's not in the record. He gets cut off continuously and isn't able to do it. And why this is so important- If your client, presumably, that's testifying, wasn't able to communicate to counsel, there are these additional expenses I can testify to if I'm given an opportunity? Because it's a direct appeal, we don't have that in the record, what his communications were with counsel. But if you look at the other- Presumably, you'd know what examples you could cite or you could point to something specific in the transcript where he's about to testify about something and it's stopped. There were instances where he is talking about the type of work that he needs to do to create the gross income. He also was talking about how residual income works where you're not doing the work anymore, but you get a check. And it's all cut out throughout his testimony. And why this is extremely important is because the other issues in this case. He was denied an expert on the issue of gross versus net proceeds. So the government was able to have their witnesses come forward and say, well, he made this much money this year, this much money this year, and it was all gross. You never had an expert be able to come in and say what the net was. So he was the only one who could do it. And when he's cut off continuously, it prejudices him. And then when you look at what was happening with his counsel during the case, and I'm aware that generally ineffective assistance to counsel is not raised on a direct appeal. But in this case, it must be because throughout the case, the judge is warning defendant's counsel, I'm going to sanction you. You're not ready. Where's the exhibit list? Type it up in court. I mean, he was coming up with. Can you point to any evidence that was excluded because of a counsel failure? Or a witness that was excluded? He, the, when it came time for Mr. Bond to put on his case, the judge asked him how many witnesses he had, and he said four. And the judge said, you can have two. Okay. So two witnesses were excluded. There was. Who were the two witnesses? You may be about to get to it. Who were the two witnesses were excluded? They were two character witnesses. So the four witnesses other than himself he was offering, were they all character witnesses? No, they were not. There was one who was going to testify to how you get residual income in insurance, and then there were three character witnesses, and two of them were excluded. So he was allowed one of three character witnesses, is that right? Yes. Okay. I'm running short on time, but I want to take a few seconds to talk about the ineffective assistance of counsel. There was no witness list ready on the day of trial. Throughout the case, the court's continually reprimanding defendant's counsel, both in front of the jury and privately. Sometimes Mr. Bond was there when this was happening. Sometimes he wasn't. He had no idea what was going on with his case, and that permeated throughout and prejudiced Mr. Bond. If there's no further questions, I'd like to save my remaining time for rebuttal. I don't see any. Thank you for your argument. We'll hear from the government at this time. Counsel? Mr. Boyle? Good morning, Your Honors. John Boyle on behalf of the United States. Regarding issue number one, the issue in this case was never net income. The issue was whether the defendant concealed events in his life that would have affected his benefits. Now, the claim has been that he was not given a CPA, and therefore we don't know his net income. I'll just direct you to Exhibit 23, which is in the SCR. In that exhibit, the defendant lists his net income for all of 1998 and 1999. He lists it by month as $600 a month. The jury knew what his net income was because the defendant had written it out for the Social Security Administration, so a CPA would not have been able to assist him because he was able to tell them exactly how much his net income was. I'll remind you that the threshold for Social Security was $200 a month, in which the trial work period would end, and then he would go to substantial gainful activity. So he was triple that amount, so the jurors knew his net income because he reported it. Does that mean that in defense of a criminal case, the defendant could not present evidence that contradicted what had been put on the form? Could he get on the stand and say, you know, I'm not a CPA, I'm not an expert, this was my best guess. It turns out I'm wrong. He could have introduced that information, yes. However, the issue in the case wasn't whether he was a good accountant. It was whether he was acting in good faith with the Social Security Administration, and whether or not his actual $600 figure was correct or not wasn't his duty. His duty was to report to them things that were changing in his life, his ability to work, the hours a week he worked, and the amount of income he was making. So it would not have affected anything in this case, and it certainly wasn't necessary for his defense. What was the government's burden in this case? To show what? The government's burden under Social Security fraud was knowledge of an event affecting his rights and his ability to collect benefits, and that he, with fraudulent intent, withheld or concealed those events. So there was never an element that required net income versus gross income. That was never an element of the offense. Secondly, they never showed any prejudice. They never showed an example of how a CPA, had one been used, would have actually helped them in any way. We don't know if it would have helped or hurt, but they certainly never came up with any example at any time at the district court or here as to what information a CPA would have provided that would have helped them. Did the government's witnesses, any of them, have accounting training? Yes. How many of them? Certainly the CPA who testified, Mr. Rodriguez, was a CPA. The first individual who testified was a Social Security Administration employee and was working with those numbers. She was not a CPA, but she had accounting experience. Isn't the standard under the DePue case whether a reasonably competent counsel would have required the assistance of the requested expert? It is, along with prejudice by clear and convincing evidence. Why wasn't that met here? Well, for two reasons. One, an attorney would not have needed a CPA because the defendant provided his net income. We knew it. The jury knew it. Okay, so we're back to this notion that because he put $600 down on his form, that's it? He can't alter that? He can't offer proof that would affect that in any way? He certainly could have presented that evidence. First of all, he testified. The information was at his house, and he was able to give information to the jury. The defense attorney cross-examined all the witnesses on this very issue. However, a CPA was not necessary because, again, the issue wasn't whether he was actually correct at $600 a month being his net income. The issue was whether. . . Why did you put on evidence of his net income and explain it? Because it shows his state of mind. It shows. I mean, they want to refute that. You claim the evidence isn't necessary, and yet you put it on in your case in chief. No, I believe the evidence was necessary. I'm just saying that when the defense claims they didn't know his net income and they assert that in the brief, that's not actually true. This was a defendant who had some difficulty communicating his case to the jury. Wouldn't it be fair to say that? Whatever the reason, whether it was intended, designed, the result of his disability or whatever, he had some difficulty explaining himself to the jury, didn't he? I don't think you can draw that from this record. He had four and a half hours on direct, not three and a half hours. If you look at the transcripts, it's four and a half hours on direct. Whether he was eloquent or whether he was confusing, I don't know we can draw that conclusion. He certainly at times was nonresponsive and was rambling and the court was interrupting him. But I don't think you can draw from this record whether or not he was having difficulty. Doesn't that at least suggest the possibility that he couldn't communicate the concepts and that perhaps an accountant or somebody else who could make a compilation might be able to communicate that better? No, I don't agree with that because, again, he has to describe what's happening in his own mind, what was happening during these years, where he was working, his ability to work. He testified and told the jurors all those things. Whether or not he was actually a good accountant would not have assisted him because... Suppose they'd had an accountant who presented evidence that, in fact, that he hadn't properly determined expenses and that his actual net income was less than what was it, $200 per month. Would that have made a difference in the outcome or could that have made a difference to the jury? No, and the reason is when he declared that his net income was $600 a month when he filled out those forms, he was telling them what his mental state was. He knew he was making $600 a month. And the letter that you get that's in the exhibit that shows the trial work period that showed $200 a month being the threshold showed that he tripled it. But, again, the issue isn't whether or not that was accurate. So why did you need an expert if the issue is not accuracy? Why did you put on an expert? The expert for the government didn't give an opinion as to net versus gross income. The expert merely took all the evidence that was found at his house and the evidence from the Internal Revenue Service and provided a summary, which are Exhibits 85 and 86, just to show how much income he was making. But it was designed to try to show not the state of mind but income flow and income, right? Correct, gross income flow, which affected his ability to work. Throughout this whole trial, the only issue, aside from his income, was was this person working during this period. It was not disputed that he never self-reported to the Social Security. There's no room in the government's calculus on this kind of charge for honest mistake? There is certainly room for honest mistake. And the defendant was able to testify and tell the jurors that he believed he was being honest with them. They chose not to believe him. But in regard to the first charge in this and their first argument, was a CPA necessary? The government didn't believe that one was necessary at all. Well, does it continue to be your position that if he had had access to a CPA and the CPA had been able to get on the stand, testify under oath, and according to general accepted accounting principles, testified that the defendant's net income never exceeded $200 per month, that that wouldn't have affected the verdict? In this case, yes. That is the government's contention. And you think that because? Because he reported his net income of $600 a month. And what was relevant is he never communed to the Social Security Administration until they asked him in 2001. Even if he thought the entire time, because he's not an expert, perhaps he's confused, all of us seek some kind of professional help when we file our returns on April 15th. Sometimes things that we think are deductions are not. Sometimes things that we think are not deductions turn out to be. It's just the fact that he put that $600 down, that's it. Well, that's not it. He couldn't be completely mistaken in the way he calculated that $600. He could have been mistaken, but the point was he never reported those numbers to Social Security during those years. Even if he didn't know? Let's assume that hypothetically that the trial judge appointed a CPA expert and pointed out to him these things, and until the moment the CPA pointed it out, he didn't realize what his net income was. Would you still feel the same way? I would because it wouldn't affect the single fact in this case, which is he never reported any change of circumstance to the Social Security. So his burden is to report a change in circumstance, even if he does not comprehend that it has occurred. Is that right? No, that is not. I do not agree with that. I would concede, of course, that he has to know that these things are happening. And if he needed expert accounting advice to arrive at that proper conclusion, where does that leave us? If he needed an expert to arrive at that conclusion, yes, he would need an expert. But in this case, he did not need an expert to arrive at that conclusion because these events were happening to him. He had his own business. He was working as an insurance salesman, and his tax forming indicated he was driving between 18,000 and 24,000 miles a year. He never reported any of that to the Social Security Administration. So he didn't need an expert to convey all of these changes in his life that affected his ability to work. So on that ground, he would not have needed one. And I'll also again direct you to the fact that we are engaging in hypotheticals here, but there's an actual no notice of what evidence they would have provided through a CPA, which would tell us how he was prejudiced. Going to exhibit argument number two, there are a few points. The first is the defendant's direct testimony was 4 1⁄2 hours. He certainly had enough time to present his side of the story and to tell the jurors what it was that he was thinking. He began his testimony in the morning on the 9th at around 1048 a.m. These questions by the judge were in the afternoon at 345. No one has contested that the judge was actually wrong. If you look at the transcript, the judge says, you've answered the question, next question. She doesn't tell the witness what she thinks. She merely says, you've answered the question, next question. And that's after giving the defendant warnings that he needed to listen to the question and answer appropriately. The government does not agree that at any time he was told you must answer yes or no. There are 270 pages of transcript for his testimony in this case. The defense has singled out 12 where the court was saying, you've answered yes or no, move to the next question. He was always able to elaborate and give his explanation of the story. We do not agree that he was only told throughout the trial he could say yes or no. And I'll also refer to the point in the brief where in the next morning, where the defendant is testifying, the court says, you have half an hour to finish your testimony that morning, and she says, you'll be done by 930. The defendant's direct testimony ends at 1118. Yeah, she gave him about three times that amount of time, right? Right. And, again, the trial attorney never objected when the court said, you've answered yes or no, move on. The defense attorney never went to the court and said, you've prevented me from saying. . . I thought the court said he had to put his objection in writing. I don't see any objection at any point through this trial where the defendant. . . Why not? He says, I don't have a typewriter here. I can't. I can't. I don't have a computer here. How am I going to put my objection in writing? She just says, go cope with my ruling. It's hard to fault the defense counsel for not objecting under those circumstances. He says, I do object. I object strenuously. I don't know what you mean I have to submit it in writing. I don't have a typewriter or computer. Do you mean I have to write it out longhand? I'm sorry. I won't accept professional misconduct. Do you do what you can? My order is what it is. You don't have a typewriter? You don't have a computer? Write it out. It's a little bit. . . You make an objection and the court comes back with that. It's hard to fault the attorney for not strenuously objecting at every moment. I'm just reacting to your comment. I am. I'm not arguing. Yes. Well, I think my point specifically is that when the court said, you've answered yes or no. Please answer the next question. Yes. And she says, well. . . I mean, this precedes this dialogue that you're talking about. Don't worry. You said I need more time? Yes. Yes. I'm just referring to the 12 pages the defense has pulled out. If you look at the questions, they were yes or no questions, and the court stopped the defendant from giving irrelevant and rambling answers. But that only happens for 12 pages. It's 270 pages of total testimony. And the defendant was certainly able to present the story. And finally, the jurors were given instructions in this case at the beginning and the end that they were not to consider the judge's demeanor or to infer any bias on the part of the court. And jurors are presumed to follow those instructions. In totality, then, this defendant certainly had enough time to present his whole story, given that he had four and a half hours on direct testimony. What do you make of the second judge, Judge Campbell's, decision to release the defendant on bail pending appeal and his statements in support of that, his or the judge's statements in support of that? Judge Campbell merely found that under United States v. Handy that there was a fairly debatable question. And if the defendant prevailed on one of these fairly debatable questions, he could prevail. The judge didn't give an opinion as to whether or not the defendant would run on the merits. Certainly the government doesn't believe the defense has shown any prejudice in this case whatsoever. How long have you been an assistant? Three years. And do you do exclusively criminal work? I do. On how many occasions have you seen this happen with a convicted defendant? A defendant released pending appeal? Yes, sir. Less than a dozen, more than a half dozen. Okay. I see you're out of time. Thank you very much for your argument. You have a few minutes for a rebuttal, counsel. Thank you, Your Honor. Mr. Rosenquist and I have been working on appeals through the CJA appointments for over six years now. This is the first case where we have had a client who has been released pending appeal. I think that says a lot for this case. In this case, there is no doubt about Mr. Bond's disability. That is never contested. He was a victim in a very serious car accident. A very serious head injury. And what the rulings in this case required him to do, and it's key with it, the rulings saying no expert, the ineffective assistance of counsel, the being cut off continuously, what all this does, the government presenting the gross income, what all this does is require Mr. Bond to prove that he is not guilty of this. The burden was on the government. And instead, the way the case came down, this was a case where the defendant had to prove that he was innocent. Throughout the government's case, they stated, well, he could testify and he could clarify that. He wasn't required to testify. But in this case, he was. He had to testify. There was no one else who could talk about how the insurance worked, how his net income versus gross income worked. He had to try to do it himself, a non-expert, a layperson. Even if he had an expert, he'd have to testify because the accountant couldn't authenticate expenses. He'd presumably have to testify to establish what his expenses were and then the accountant could tabulate it. He could testify to authenticate it, but he wouldn't have had to try to explain how it all works in the social security system. Without a doubt, this is a very complicated case. An expert would have helped. Without an expert, he was prejudiced. He had an attorney who, it appears, did not know anything about the social security regulations, didn't know how net expenses versus gross expenses worked, didn't know anything about how an insurance agent worked, and tie that together with the judge's ruling saying answer yes, no, or I can't answer yes or no, you show definite prejudice and his conviction should be reversed. If there's no further questions, I'll ask. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision, and we'll proceed to the next case on the calendar, which is.
judges: Hawkins, Thomas, Clifton